**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| COREY KNIGHT, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CARMIKE CINEMAS, et al. | : | No. 11-280 |

## MEMORANDUM RE: MOTIONS TO DISMISS

**Baylson, J.**                                                        **August 22, 2011**

## I.      Introduction

In this civil rights case, arising out of the arrest of Plaintiff Corey Knight ("Plaintiff") on January 4, 2010 by Dover police for armed robbery, the facts and circumstances presented by Plaintiff's Complaint, and the Defendants' Motion to Dismiss, warrant, for the reasons stated below, the legal representation of Plaintiff and an amended complaint.[1]

Briefly stated, the facts alleged by Plaintiff show that he was stopped by police because he was driving a vehicle, virtually identical in appearances, to the vehicle used by certain individuals who had, earlier that same night, committed an armed robbery of employees of a movie theater who were dropping off bags of currency in a night deposit at a bank.  The circumstances suggest the police had probable cause to stop the Plaintiff and inquire, by virtue of the identical appearance of his car with the car operated by the robbers.

---

[1] Plaintiff filed his Complaint on April 4, 2011 (ECF No. 1).  Now before the Court are two Motions to Dismiss for failure to state a claim.  The first Motion to Dismiss was filed on May 24, 2011 by Carmike Cinemas, Matthew Holman, and William Anthony Shaw (collectively, the "Carmike Defendants").  (ECF No. 10)  The second Motion to Dismiss was filed on June 6, 2011 by Defendants City of Dover, Chief of Police Jeffrey Horvath, Mayor Carleton Carey (collectively, the "Dover Defendants"), Private First Class ("PFC") Salvatore Musemici, Officer Matthews, Master Corporal ("MCPL") Taylor, MCPL Hurd, Officer Figueroa, PFC Sealand, and Sargent Richardson, in their individual and official capacities (collectively, the "Officer Defendants") (ECF Nos. 11/12).

The Complaint goes on to allege that after this stop, Plaintiff was taken to the police station, interrogated for six hours, charged with armed robbery, spent a week in jail, and then eventually was released on bail.

He was represented by a public defender, who, after a passage of time without any action, moved to dismiss the prosecution because no indictment had been returned. In the interim, the police had requested that Plaintiff give a saliva sample for DNA testing, which Plaintiff alleges he agreed to do. The Complaint also alleges that the police secured a search warrant for a sample of Plaintiff's saliva. The Complaint does not allege any specific facts about what identification, if any, the victims made or didn't make as to Plaintiff.

Following Defendants' Motion to Dismiss the current case, the next event, according to Plaintiff's Complaint, was a letter from the prosecutor to Defendants' counsel enclosing a nolle pros, without prejudice.

The Defendants' Motion to Dismiss in this case asserts that Plaintiff has failed to state a claim, and that his case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

The situation which emerges from the Complaint, with some reasonable inferences, is that Plaintiff may have been justifiably arrested for investigation, but that the State agreed to drop whatever prosecution it had initiated because there was, eventually, no evidence that Plaintiff had committed the armed robbery. Nonetheless, Plaintiff was interrogated for a substantial period of time, incarcerated for six days, and may have legitimate claims for damages. However, the Court does not prejudge the situation, because the police may have had probable cause and a reasonable basis for all the actions they took, and/or may be entitled to qualified immunity.

What is obvious is that Plaintiff, appearing pro se, is not in a position to prosecute this case on his own. The Court has therefore referred the case to the Delaware District Court's volunteer civil panel of attorneys to determine if an attorney would agree to represent the Plaintiff on a pro bono basis. (ECF No. 29) Of course, if there is any eventual recovery, counsel may be entitled to attorney's fees for efforts made in this regard. However, no guarantees can be made.

As the discussion below will show, there are a number of infirmities in Plaintiff's complaint as drafted. Although the Court has entered a stay of proceedings pending appointment of counsel, the Court believes that it should make a decision on the Defendant's Motion to Dismiss. In general, the Court concludes as follows:

1.    Many of the Defendants named by Plaintiff had no role in this case and should be dismissed.

2.    Plaintiff should be allowed to amend his Monell allegations against the City of Dover with more detailed facts.

3.    Plaintiff will be given leave to amend the Complaint, after further investigation, presumably with legal representation.

Assuming counsel agrees to represent Plaintiff, an exchange of documents should take place between the Plaintiff and whatever defendants are named in an amended complaint. The Court would be willing to extend the deadline for an amended complaint if there is an agreement on the exchange of documents before Plaintiff files an amended complaint.

The Court instructs appointed counsel to advise this Court's Deputy Clerk of the fact of appointment, so that a Rule 16 conference can be scheduled.

If no volunteer attorney takes the case, then the Court will likely schedule a Rule 16 conference with Plaintiff pro se and defense counsel.

## II.     The Parties' Contentions

### A.     Dover Defendants and Officer Defendants

The Dover Defendants and Officer Defendants contend that Plaintiff fails to state any claim under 42 U.S.C. § 1983 because there was probable cause for Plaintiff's arrest and detention, and Plaintiff did not sufficiently allege a valid Monell claim for municipal liability under § 1983.  Finally, Defendants contend they are immune from state tort liability under the Delaware County and Municipal Tort Claims Act, Del. Code Ann. tit. 10 § 4010 et seq. (West 2010) (the "Tort Claims Act").

### B.     Carmike Defendants

The Carmike Defendants contend that Plaintiff fails to state a § 1983 claim against them because Plaintiff alleges no facts to suggest that Defendants acted under color of state law.  Carmike Cinemas argues that Plaintiff has failed to state a § 1983 claim against it because there is no respondeat superior liability under § 1983.  Finally, they contend that Plaintiff fails to state a malicious prosecution claim against them because Defendants did not initiate any action against Plaintiff.

### C.     Plaintiff

Plaintiff contends that he sufficiently pled claims against all Defendants.  Plaintiff asserts claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) against all Defendants for violation of his Fourteenth Amendment right to Equal Protection (Count I); violation of his federal Fourth Amendment and Delaware state constitutional Article 6, Section 1 right against unreasonable

search and seizure (Count II); and malicious prosecution under the Fourth Amendment and Delaware law (Counts VI and VII).[2]

Plaintiff asserts additional claims against the Officer Defendants for false arrest and illegal detention in violation of his Fourth Amendment rights (Count III)[3] and the state law tort of Intentional Infliction of Emotional Distress (Count IV).[4] Plaintiff asserts a claim against the City of Dover for violation of Title IV of the Civil Rights Act of 1964 (Count V). He contends that his claims are supported by the fact that all charges against him were dropped and because the Defendants have never presented any evidence to a court.

## III. Legal Standards

### A. Jurisdiction

This Court has federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff alleges causes of action pursuant to the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Title VI. The Court has supplemental jurisdiction over Plaintiff's related Delaware state law claims pursuant to 28 U.S.C. § 1967. Venue is proper under 28 U.S.C. § 1391(b).

### B. Standard of Review

---

[2] Plaintiff alleges both malice (Count VI) and malicious prosecution (Count VII). Because malice is an element of malicious prosecution, rather than a stand-alone tort, the Court will analyze only Plaintiff's malicious prosecution claim.

[3] In his Response to the Motions to Dismiss, Plaintiff alleges an additional Fourth Amendment claim for illegal search based on the saliva sample that was retrieved from Plaintiff pursuant to an allegedly invalid search warrant. However, Plaintiff cannot amend his Complaint via his response brief. See Commw. of Pa. ex rel. Zimmerman v. Pepsico Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"). Therefore, the Court will not consider this claim.

[4] Plaintiff titled this claim "Intentional Outrageous Conduct," which the Court treats as an allegation of intentional infliction of emotional distress.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  When deciding a motion to dismiss, the Court accepts as true all well-pleaded facts and construes them in the light most favorable to the non-moving party.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).

The Court must hold the allegations in a pro se plaintiff's complaint to a less stringent standard than pleadings drafted by lawyers and grant the motion to dismiss only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  McDowell v. Delaware State Police, 88 F.2d 188, 189 (3d Cir. 1996) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).  When a plaintiff is proceeding pro se, the Court has a "special obligation" to construe the pleadings liberally in favor of the plaintiff.  Zilich v. Lucht, 981 F.2d 694, 694 (3d Cir. 1992) (citing Haines, 404 U.S. at 520).

When the district grants a motion to dismiss, leave should be given to amend the complaint unless there is a justifying reason to deny leave, such as undue delay, bad faith, or dilatory motive.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities."  Dole v. Arco Chem. Co., 921 F.2d 484, 486-87 (3d Cir. 1990).  Further, in a civil rights case, a court must allow a plaintiff leave to amend the complaint unless it would be inequitable or futile to do so.  Phillips, 515 F.3d at 245.

The Third Circuit has addressed the effect of the Supreme Court's most recent pleading-standard decisions, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  See Phillips, 515 F.3d at 233-34.  Twombly established a three-pronged

approach for all civil actions: first, the court must identify the elements Plaintiff must plead to state a claim; second, the court asks whether the complaint sets forth factual allegations or conclusory statements; third, if the complaint sets forth factual allegations, the court must assume their veracity and draw reasonable inferences in favor of the non-moving party, but then must determine whether the factual allegations plausibly give rise to an entitlement to relief. Santiago v. Warminster Twp., 629 F.3d 121, 130 & n.7 (3d Cir. 2010); see Iqbal, 129 S. Ct. at 1950, 1953. For the second step, the court should separate the factual and legal elements of the claims, must accept the well-pleaded facts as true, and may disregard any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

The undersigned, formerly a member of the Advisory Committee on Civil Rules, knows that many practitioners and judges share in the confusion resulting from Iqbal's seemingly strong requirement of factual pleadings in the absence of any specific overruling of prior cases allowing traditional notice pleading. The Court concludes that notice pleading is still the rule, because Rule 8 is still in effect, but that the concept of notice pleading has changed and must be accompanied by either factual or legal assertions satisfying the elements of the claims made. See Phillips, 515 F.3d at 234. In other words, "notice pleading" now requires "notice" of at least those facts necessary to raise an inference that the defendant has stated a counterclaim. See id. at 234-35 (concluding Rule 8 requires "some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation").

Nevertheless, it is "true that judging the sufficiency of a pleading is a context-dependent exercise. Some claims require more factual explication than others to state a plausible claim for relief." W. Penn Allegheny Health Sys. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010) (reversing district court's application of heightened scrutiny in antitrust context) (internal citations

omitted).  Thus, pleading a civil rights claim may require fewer factual allegations than pleading an antitrust conspiracy or other complex business dispute.  Cf. id. (suggesting a claim for simple assault may require fewer factual allegations than a claim for an antitrust conspiracy).

To state a claim, a plaintiff must allege circumstances with enough factual matter to suggest the required claim exists.  Phillips, 515 F.3d at 234.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims, Iqbal, 129 S. Ct. at 1949; Phillips, 515 F.3d at 234.  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949).

**IV.     Discussion of Section 1983 Claims**

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the United States Constitution committed by a person acting under color of state law.  Piecknick v. Commw. of Pa., 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Under Third Circuit precedent, a § 1983 claim will survive a motion to dismiss under Rule 12(b)(6) if it "allege[s] the specific conduct violating the plaintiff's rights, the time and place of the conduct, and the identify of the responsible officials."  Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988).  Section 1983 "does not create substantive rights; rather it merely provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws."  Estate of Smith v. Marasco, 318 F.3d 497, 505 (3d Cir. 2003) (quotations and internal citations omitted).  Therefore, the initial question in any § 1983 inquiry is whether the plaintiff has "alleged a

deprivation of a constitutional right at all." Id. (quoting Donahue v. Gavin, 280 F.3d 371, 378 (3d Cir. 2002)).

Here, Plaintiff alleges a violation of his Fourteenth Amendment right to Equal Protection and three separate Fourth Amendment violations: unreasonable search and seizure, false arrest and illegal detention, and malicious prosecution. The Court will analyze the constitutional claims alleged against each group of defendants.

### A.     Section 1983 Claims Against the Carmike Defendants

Plaintiff alleges that on or about one o'clock a.m. on January 4, 2010, Matthew Holman ("Holman") and William Anthony Shaw ("Shaw"), employees of Carmike Cinemas ("Carmike"), were at a TD Bank in Dover, Delaware to drop off three of Carmike's night deposit bags. Compl. ¶ 10. A masked assailant brandishing a silver revolver robbed Holman of one of the night deposit bags containing approximately $3,300. Compl. ¶ 3. Holman alleged that there were three men involved in the robbery and that he saw the suspects enter a Lincoln SUV parked near the corner of Hiawatha Lane. Compl. ¶ 3. It is unclear from Plaintiff's complaint when Holman and Shaw reported the alleged robbery to the police. MCPL Taylor ultimately brought Holman to the Chatham Cove Apartment parking lot and Holman positively identified Plaintiff's vehicle as the alleged robbers' get-away car. Compl. ¶¶ 19-20.

For a constitutional deprivation to be fairly attributable to the state, the complaint must allege that 1) the deprivation was caused by a state-created right or privilege or state-imposed rule; and 2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982). A private citizen may fairly be said to be a state actor when "he is a willful participant in joint activity with the State or its agents." Id. at 941 (quotations and citations omitted).

In Caswell v. BJ's Wholesale Company, the plaintiff alleged a § 1983 false arrest claim against store employees who reported a possible crime to the police and cooperated in the subsequent police investigation that resulted in plaintiff's arrest. 5 F. Supp. 2d 312, 318-19 (E.D. Pa. 1998) (Van Antwerpen, J.). The court dismissed the plaintiff's claim because the plaintiff failed to allege sufficient facts to suggest a formal working relationship between the employees and the state. Id. Therefore, the court held that the employees were not working under color of state law. Id.

Similarly, Plaintiff alleges that Holman and Shaw reported an alleged robbery to the police and that Holman identified Plaintiff's vehicle as the suspects' get-away car when Holman was brought to Chatham Cove Apartments as part of the police investigation. As in Caswell, Plaintiff does not allege any facts to suggest a formal procedure or working relationship with the state as required to state a claim against private citizens under § 1983. The Court will grant the Carmike Defendants' motion to dismiss Plaintiff's § 1983 claims against them for Fourteenth Amendment Equal Protection violation (Count I), Fourth Amendment unreasonable search and seizure (Count II), and malicious prosecution (Count VII).

**B.      Section 1983 Claims Against the Officer Defendants and Dover Defendants in their Official Capacity**

Plaintiff has alleged constitutional claims against the Officer Defendants, Mayor Carey, and Chief Horvath in both their individual and official capacities, as well as the City of Dover, the entity for which these Defendants are agents. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent'" and are "a duplication" of claims against the entity. Gregory v. Chehi, 843 F.2d 111,

10

120 (3d Cir. 1988) (quoting Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 n.55 (1978)).  Therefore, the Court will dismiss all of Plaintiff's claims against the Officer Defendants in their official capacities because they are duplicative of the claims against the City. The Court will discuss the claims against the City below.

### C. Section 1983 Claims Against the Officer Defendants and Dover Defendants in their Individual Capacity

#### 1. PFC Musemici, Officer Hurd, Officer Figueroa, PFC Sealand, Sgt. Richardson, Mayor Carey, and Chief Horvath

A § 1983 claim against multiple defendants requires that the plaintiff allege "personal involvement in the alleged wrongs" against each individual.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Personal involvement can be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence."  Id.

Plaintiff alleges no facts whatsoever to suggest the individual involvement of PFC Musemici, Officer Hurd, Officer Figueroa, PFC Sealand, Sgt. Richardson, Mayor Carey, or Chief Horvath in the alleged constitutional violations.  The Complaint does not allege these individuals were at Chatham Cove Apartments when Plaintiff was initially stopped or arrested. Therefore, the Court will dismiss all claims against PFC Musemici, Officer Hurd, Officer Figueroa, PFC Sealand, and Sgt. Richardson in their individual capacities.

#### 2. Officer Matthews and MCPL Taylor

Plaintiff alleges, and it is uncontested, that Officer Matthews and MCPL Taylor were acting under color of state law on January 4, 2010 as sworn police officers for the City of Dover. Compl. ¶ 6.  Plaintiff contends that the actions of Officer Matthews and MCPL Taylor on January 4, 2010 gave rise to four constitutional claims, three under the Fourth Amendment and one under the Fourteenth Amendment.

i.      *Officer Matthews Blocks Plaintiff's Car and Searches Plaintiff*

Plaintiff alleges that Officer Matthews effectuated the initial stop of Plaintiff's vehicle in the Chatham Cove Apartments parking lot and searched the Plaintiff. Compl. ¶ 19. Plaintiff contends that Officer Matthews acted without reasonable suspicion or probable cause giving rise to a claim for unreasonable search and seizure under the Fourth Amendment (Count II). Compl. ¶ 43.

A seizure is a restraint of movement by either physical force or a show of authority. United States v. Mendenhall, 446 U.S. 544, 553 (1980). Generally, a search or seizure not pursuant to a warrant is presumptively unreasonable. Groh v. Ramirez, 540 U.S. 551, 559 (2004). An initially consensual interaction becomes a seizure "when a reasonable person would no longer 'feel free to decline the officers' requests or otherwise terminate the encounter.'" Johnson v. Campbell, 332 F.3d 199, 205 (3d Cir. 2003) (quoting Florida v. Bostick, 501 U.S. 429, 436 (1991)). A seizure begins with "either (a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.'" United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006) (quoting California v. Hodari D., 499 U.S. 621, 626 (1991)). The "objective" test for a "show of authority" is "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Hodari D., 499 U.S. at 628.

In United States v. Brown, 448 F.3d 239 (3d Cir. 2006), the Third Circuit found that the officer's seizure of the defendant began when the officer told Brown he was a suspect for a robbery, ordered him to place his hands on the police car, and "Brown turned to face the police car and placed his hands on the vehicle in response." Id. at 245-46. The officer's instruction in

Brown amounted to a "show of authority," with which the defendant initially complied. Id. at 246. Cf. United States v. Smith, 575 F.3d 308, 311 (3d Cir. 2009), cert. denied, 130 S. Ct. 771 (2009) (no seizure occurred when the police officer asked defendant to put his hands on the hood of the police car, and defendant took two steps towards the police car before fleeing); see also Gentry v. Sevier, 597 F.3d 838, 844-45 (7th Cir. 2010) (seizure began "[w]hen the officers pulled up in their patrol car and one officer exited the car and told Gentry to 'keep his hands up,'" because a reasonable person in Gentry's position would not have believed he was free to leave).

In O'Malley v. Lukowich, the plaintiff alleged that police officers surrounded his car, handcuffed, and searched him for the sole purpose of pressuring the plaintiff to make false statements. Civ. A. No. 3:08-CV-0680, 2008 WL 4861477, at *5 (M.D. Pa. Nov. 7, 2008) (Caputo, J.). The court held that the plaintiff alleged sufficient facts to state a claim because being surrounded by officers and handcuffed amounted to a seizure under the Fourth Amendment and Plaintiff's factual allegations could "reasonably support a finding that [the officers] lacked any objective basis or reasonable justification to handcuff, search, and hold" the plaintiff. Id.

An investigative stop or "Terry stop" is an exception to the warrant requirement for a lawful seizure. In Terry v. Ohio, the Supreme Court held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," the officer may make "reasonable inquiries" to investigate the behavior. 392 U.S. 1, 30 (1968). Reasonable suspicion is determined by the totality of the circumstances and requires that the officer "articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 27).

If the initial encounter does not dispel the officer's reasonable fear for the safety of himself and others, the officer may "conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." Terry,392 U.S. at 30. Officers are "authorized to take such steps as [a]re reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a Terry] stop." United States v. Hensley, 469 U.S. 221, 235 (1985). A frisk is lawful if the investigative stop itself is lawful, and "the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." Arizona v. Johnson, 555 U.S. 323, 784 (2009). Under the "plain feel" doctrine, a police officer may exceed the scope of a Terry pat-down search for weapons if, during the course of the pat-down of a suspect's clothing, the officer feels an item that is identifiable as contraband. Minnesota v. Dickerson, 508 U.S. 366, 371 (1993).

It is unclear from Plaintiff's Complaint when Holman and Shaw, the victims of the alleged robbery at TD Bank, reported the crime to the police. The Court cannot therefore determine whether Officer Matthews heard Holman's description of a Lincoln SUV with Maryland tags driven by the suspects, prior to stopping Plaintiff's car. Presuming he had this knowledge, Officer Matthews would have the reasonable suspicion necessary to make the initial investigatory stop of Plaintiff's car. In his Complaint, Plaintiff does not specify the timing or the extent of Officer Matthews' search.

Because of the lack of specificity in Plaintiff's Complaint, the Court finds that Plaintiff has failed to allege sufficient facts to support a claim for an unreasonable search and seizure under the Fourth Amendment. The Court will grant the Officer Defendants' motion to dismiss Count II, Plaintiff's Fourth Amendment unreasonable search and seizure claim against Officer Matthews, with leave to amend.

ii.   *Officer Matthews and MCPL Taylor Arrest and Detain Plaintiff*

Plaintiff alleges that Officer Matthews and MCPL Taylor were at the Chatham Cove Apartments parking lot at the time of Plaintiff's arrest and transport to the Dover Police Station after Holman positively identified Plaintiff's car as the alleged robbers' get-away car.[5]  Compl. ¶¶ 21-23.  Plaintiff contends that Officer Matthews and MCPL Taylor acted without probable cause in violation of his Fourth Amendment right against false arrest and illegal detention (Count III).  Compl. ¶ 46.

To state a claim for false arrest and illegal detention in violation of the Fourth Amendment, plaintiff must allege that he was arrested and that his arrest was made without probable cause.  Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  If police make an arrest without probable cause, the arrestee has an additional cause of action under § 1983 for "false imprisonment based on a detention pursuant to that arrest." Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (citing Thomas v. Kippermann, 846 F.2d 1009, 1011 (5th Cir. 1988)).

For an arrest not made pursuant to a warrant, probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (citing Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1996)).

---

[5]Although Plaintiff does not identify the "arresting officers" by name, he alleges that MCPL Taylor and Officer Matthews were at Chatham Cove Apartments at the time of his arrest.  Reading the Complaint liberally, the Court infers for purposes of the Motions to Dismiss that MCPL Taylor and Officer Matthews were the arresting officers.

In a § 1983 suit, the existence of probable cause is a question for the jury. Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998). A district court may decide the question of probable cause as a matter of law if "the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).

In Basile v. Township of Smith, the plaintiffs alleged they were arrested without probable cause. 752 F. Supp. 2d 643, 658 (W.D. Pa. 2010) (Lenihan, M. J.). The defendants filed a motion to dismiss arguing that the plaintiffs' warrantless arrest was based on probable cause and included an affidavit of probable cause completed by the police after their arrest outlining the reasons for their arrest on drug charges. Id. The court dismissed the plaintiffs' false arrest claim because they failed to "allege facts to show (or at least suggest) that the basis provided by the arresting officers' for Plaintiffs' arrest is disputed or did not exist," not merely "the conclusory allegations that they were arrested without probable cause and Defendants conspired to falsify the affidavit of probable cause." Id.

Here, Plaintiff's allegations that he was driving a car appearing similar to the robbers' vehicle suggests probable cause. The justification for Plaintiff's arrest in the Dover police affidavit was the victim's identification of Plaintiff's car. Therefore, as in Basile, the Court finds that the Plaintiff has failed to allege sufficient facts to state a claim for false arrest and illegal detention. The Court will grant the motion to dismiss Count III, Plaintiff's false arrest and illegal detention claim against Officer Matthews and MCPL Taylor.

        iii.   *Officer Matthews and MCPL Taylor Arrest and Detain Plaintiff*

Plaintiff alleges that Officer Matthews and MCPL Taylor pursued the case against him with an improper purpose giving rise to a claim for malicious prosecution under the Fourth Amendment (Count VII). Compl. ¶ 58.

A § 1983 claim for malicious prosecution requires a plaintiff to allege five elements:

"'(1) the defendants initiated a criminal proceeding;

(2) the criminal proceeding ended in plaintiff's favor;

(3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'"

Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)). With respect to the second element, under Third Circuit precedent, a grant of nolle prosequi is considered favorable termination "only when their final disposition is such as to indicate the innocence of the accused." Donahue v. Gavin, 280 F.3d 371, 383 (3d. Cir. 2002) (internal citations omitted).

In Dennis v. Evans, the plaintiff brought a malicious prosecution claim under § 1983 after a nolle prosequi order was entered in his case. Civ. A. No. 1:09-0656, 2011 WL 900911, at *8 (M.D. Pa. Feb. 2, 2011) (Mannion, M.J.), adopted by 2011 WL 901187 (M.D. Pa. Mar. 14, 2011) (Kane, C.J.). The court held that because the order granting the motion for nolle prosequi did not indicate the plaintiff's innocence, the plaintiff could not establish that the proceedings terminated in his favor and his malicious prosecution claim must be dismissed. Id.

Similarly, the nolle prosequi entered on all charges against Plaintiff lacks any information indicating Plaintiff's innocence. Therefore, the Court will grant the motion to dismiss Count VII, Plaintiff's § 1983 malicious prosecution claim against Officer Matthews and MCPL Taylor.

iv.  *Officer Matthews and MCPL Taylor's Alleged Racially Discriminatory Motive in Stopping, Searching, and Detaining Plaintiff*

Plaintiff alleges a violation of his Fourteenth Amendment right to Equal Protection because he was stopped, searched, and detained solely based on his race (Count I). Compl. ¶ 40. The Equal Protection Clause of the Fourteenth Amendment prohibits the states from intentionally discriminating against individuals on the basis of race. Shaw v. Reno, 509 U.S. 630, 642 (1993). To state an equal protection claim based on racial discrimination, a plaintiff must allege that he received "different treatment from that received by other individuals similarly situated." Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 151 (3d Cir. 2005) (citing Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990)). In addition, to state an equal protection claim based on racial profiling, a plaintiff must allege that "the actions of [the] officials (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002) (citations omitted).

In Martin v. Monroe Township, the plaintiff contended that "his right to equal protection was violated because the officers' conduct 'was obviously racist and egregious.'" Civ. A. No. 10-3628 (MLC), 2011 WL 255826, at *8 (D.N.J. Jan. 25, 2011) (Cooper, J.) (citation omitted). The court dismissed the plaintiff's equal protection claim claim because he made conclusory allegations and had "not identified any comparator" to demonstrate he was treated differently than similarly situated people. Id.

18

In this case, Plaintiff, who is African-American, has alleged that he was stopped, searched, and arrested "solely based on his race." Plaintiff has not alleged any facts to suggest that Officer Matthews or MCPL Taylor acted with racial animus beyond this conclusory allegation. As in Martin, Plaintiff failed to allege facts to suggest that Defendants treated him differently than those similarly situated based on his race. Therefore, the Court will grant the Officer Defendants' motion to dismiss Count I, Plaintiff's Fourteenth Amendment Equal Protection claim against Officer Matthews and MCPL Taylor.

### D. Section 1983 Claims Against the City of Dover

Plaintiff alleges that the City of Dover maintains a policy of racial profiling. Compl. ¶ 33. Further, Plaintiff contends that Mayor Carey and Chief Horvath failed to adequately train, supervise, and discipline Dover police officers regarding the unconstitutionality of racial profiling and circumstances that constitute probable cause and reasonable suspicion. Compl. ¶¶ 34-36. Plaintiff argues that the alleged constitutional violations he suffered were directly caused by the City of Dover, Carey, and Horvath's deliberate indifference or tacit acceptance of these policies. Compl. ¶ 36.

To state a valid Monell claim for municipal liability under § 1983, a plaintiff must "identify conduct properly attributable to the municipality" and "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997). The plaintiff must allege both culpability by the municipality and a "direct causal link between the municipal action and the deprivation of federal rights." Id.

In this case, Plaintiff has not alleged an underlying constitutional violation, much less deliberate conduct by the City of Dover or any causal link. Therefore, Plaintiff has not stated a

<u>Monell</u> claim against the City, and the Court will dismiss Counts I, II, III, and VII for municipal liability, with leave to amend.[6]

## V.    Discussion of Remaining Federal Claims

### A.    Section 1985(3) Conspiracy Claim Against All Defendants

Plaintiff alleges that all of the Defendants acted "in concert" to violate Plaintiff's Fourteenth Amendment right to Equal Protection and Fourth Amendment right against unreasonable search and seizure.

A claim for conspiracy under 42 U.S.C. § 1985(3) is a valid cause of action "under rather limited circumstances against both private and state actors." <u>Brown v. Philip Morris Inc.</u>, 250 F.3d 789, 805 (3d Cir. 2001). To state a § 1985(3) claim, a plaintiff must allege three things: 1) underlying "'racial or other class-based invidious discriminatory animus'"; 2) "'the coconspirators intended to deprive the victim of a right guaranteed by the Constitution against private impairment'"; and 3) that the "'right was consciously targeted and not just incidentally affected.'" <u>Id.</u> (quoting <u>Spencer v. Casavilla</u>, 44 F.3d 74, 77 (2d Cir. 1994)).[7] The complaint must allege an agreement or understanding among the defendants to violate the plaintiff's constitutional rights. <u>See</u> <u>Shipley v. New Castle Cnty.</u>, 597 F. Supp. 2d 443, 450 (D. Del. 2009) (Farnan, J.) (dismissing § 1985(3) claim where the complaint merely "invoke[d] the word 'conspiracy'" and "fail[ed] to allege any facts from which one could infer an agreement or

_____

[6] If Plaintiff sufficiently pleads an underlying constitutional violation in an amended complaint, the allegations against the City of Dover must be expanded with more detailed facts showing that Plaintiff may be entitled to relief based on the conduct of various City officials, including the prosecutors, in processing this case.

[7] With respect to the Carmike Defendants, who are not state actors, the only two rights the Supreme Court has recognized as protected under § 1985(3) are freedom from involuntary servitude and the right to interstate travel. <u>Philip Morris Inc.</u>, 250 F.3d at 805.

understanding among Defendants to violate Plaintiffs' constitutional rights, or to discriminate against them under § 1985.")

Here, Plaintiff invokes the phrase "in concert" to characterize the Defendants' actions but does not allege any facts suggesting an agreement or understanding among them. The Court will grant the motion to dismiss Plaintiff's § 1985(3) claim against the Carmike Defendants, Dover Defendants and Officer Defendants.

### B. Title VI Claims Against the City of Dover

Section 601 of Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Supreme Court has held that private individuals may sue for both injunctive relief and damages to enforce the § 601 prohibition against intentional discrimination. Alexander v. Sandoval, 532 U.S. 275, 279-80 (2001). A proper plaintiff for a Title VI claim "must be the intended beneficiary of, applicant for, or participant in a federally funded program." R.W. ex rel. Williams v. Del. Dep't of Educ., Civ. A. No. 05-662-GMS/MPT, 2008 WL 4330461, at *3 (D. Del. Sept. 22, 2008) (Thynge, M. J.), adopted by 2008 WL 4547192 (D. Del. Oct. 9, 2008) (Sleet, C.J.).

Here, Plaintiff has failed to allege any facts to suggest that he was the intended beneficiary of, applicant for, or participant in a federally funded program that discriminated against him based on race. Therefore, the Court will grant the motion to dismiss Count V, Plaintiff's Title VI claim against the City of Dover.

## VI. Discussion of Delaware Constitutional and Tort Claims

### A. Delaware Constitutional Claims Against All Defendants

21

The Delaware Supreme Court has held that Article 1, Section 6 of the Delaware Constitution is "substantially identical to its federal analog" the Fourth Amendment.[8]  Estate of Smith v. City of Wilmington, Civ. A. No 04-1254 GMS, 2007 WL 879717, at *10 (D. Del. Mar. 22, 2007) (Sleet, J.), aff'd, 317 F. App'x 237 (3d Cir. 2009) (non-precedential) (quoting Rickards v. State, 77 A.2d 199, 204 (Del.1950)) (treating as identical claims under Article 1, Section 6 and the Fourth Amendment on a motion for summary judgment).  The Delaware Supreme Court "has also held that 'a violation of the latter is  necessarily a violation of the former.'" Id. (quoting State v. Prouse, 382 A.2d 1359, 1362 (Del. 1978)).

Here, Plaintiff alleges that his Article 1, Section 6 rights under the Delaware Constitution against unreasonable search and seizure and false arrest and illegal detention were violated by Officer Matthews and MCPL Taylor's actions.  Compl. ¶¶ 43, 46.  However, as discussed above, Plaintiff failed to allege facts sufficient to state a claim for violation of his Fourth Amendment right against unreasonable search and seizure or false arrest and illegal detention (Counts II and III).  Therefore, Plaintiff has also failed to state a claim for violation of his rights under the Delaware state constitution against any of the Defendants.

**B.  Malicious Prosecution Claim Against Officer and Carmike Defendants**

Plaintiff alleges a claim for malicious prosecution under Delaware state law against the Defendants because they initiated and continued the case against Plaintiff with an improper purpose.  Compl. ¶¶ 57-59.

---

[8] Article 1, § 6 of the Delaware Constitution provides that "the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation."  Del. Const. art. I, § 6.

To state a claim for malicious prosecution under Delaware law, a plaintiff must allege six elements: (1) prior institution or continuation of judicial proceedings against the plaintiff; (2) the former proceedings were initiated by, or at the instance of the defendant in the civil action; (3) the former proceedings terminated in favor of the plaintiff; (4) the defendant initiated the former proceedings with malice; (5) the defendant lacked probable cause for the institution of the former proceedings; and (6) resulting injury or damage to the plaintiff. Stidham v. Diamond State Brewery, Inc., 21 A.2d 283, 284 (Del. 1941). Under Delaware state court precedent, unlike federal law, "entry of nolle prosequi. . . is such a sufficient termination of the cause in favor of the [plaintiff]" to satisfy the third element of a malicious prosecution claim. Id. Malice means that "the act must have been done with a wrongful or improper motive or with a wanton disregard of the rights of that person against whom the act is directed." Id. at 285.

Here, Plaintiff has not sufficiently alleged the elements of a state law malicious prosecution claim. For example, he pled no facts to demonstrate that the Defendants acted with improper motive or in wanton disregard of his rights. Plaintiff's conclusory allegation that the Defendants "initiated and continued the initial case with an improper purpose" is insufficient. The Court will dismiss the claim for malicious prosecution under Delaware state law.[9]

### C. Intentional Infliction of Emotional Distress Against Officer Defendants

To state a claim for intentional infliction of emotional distress under Delaware state law, a plaintiff must allege "(1) extreme and outrageous conduct; (2) an intent to cause severe emotional distress or reckless disregard with respect to causing emotional distress; and, (3) the

---

[9] Because the Court finds that Plaintiff has not stated a claim for malicious prosecution, it need not analyze whether any of the Defendants have immunity under the Tort Claims Act, Del. Code Ann. tit. 10 § 4010(a).

conduct actually caused severe emotional distress." <u>Jordan v. Delaware</u>, 433 F. Supp. 2d 433, 444 (D. Del. 2006) (Jordan, J.) (quoting <u>Capano Mgmt. Co. v. Transcon. Ins. Co.</u>, 78 F. Supp. 2d 320, 327 (D. Del.1999) (Schwartz, J.)).  The plaintiff must establish specific conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  <u>Mattern v. Hudson</u>, 532 A.2d 85, 86 (Del. Super. Ct. 1987) (quoting Restatement (Second) Torts § 46).

Here, Plaintiff asserts that he suffered "shock, embarrassment, and severe mental distress" as a result of the Officers Defendants' actions.  However, Plaintiff does not allege any specific behavior on the part of the Officer Defendants from which the Court could infer that Plaintiff could have suffered such several emotional distress.  Therefore, the Court will grant the motion to dismiss Count VI, the intentional infliction of emotional distress claim.

**VII.    Conclusion**

For the foregoing reasons, the Court will grant the Motion to Dismiss filed by the Carmike Defendants and the Motion to Dismiss filed by the Officer Defendants and Dover Defendants.  Plaintiff is granted leave to amend his Complaint in conformity with this Memorandum.

An appropriate Order follows.

O:\DE Cases\11-280 Knight v. Carmike\Knight MTD Memorandum.wpd